Case No. 24-5165, Accuracy in Media, et al. Roger L. Arnold, Appellant, United States Department of Defense, and its components, Department of the Army, Navy Department, Department of Air Force, Marine Corps, European Command, Central Command, African Command, Special Operations Command, Office of the Secretary of Defense and Joint Staff, Defense Intelligence, AHC, et al. Mr. Clark for the Appellants, and Ms. Mattol for the Appellants. Good morning. On September 11, 2012, at approximately 335 Eastern Time, the State Department facility in Benghazi was attacked. State Department technician immediately called the CIA's Benghazi facility, which was about a half mile away, asking for help. Now, the lines of communication throughout the next 10 hours were open and stayed open. That was with the State Department, the White House Situation Room, and six combatant commands. The issue in this Freedom of Information Act lawsuit are two issues. One is whether or not the CIA at the facility in Benghazi, the chief of base, ordered the QRF, that is the Quick Reaction Force, to stand down, to not respond. And the other issue is when Secretary of Defense Leon Panetta ordered the assets to respond. Now, under the federal rules, the plaintiffs are entitled to findings of fact that are not clearly erroneous. Now, the DOD represents that it gave the order to respond at 8.39 p.m. We suggest that this is clear error for the District Court to have found that. There is no record whatsoever of that order being given or received until over six hours later at 3 a.m. September 12. We suggest that there is no record because the order was not given, contrary to the DOD's representation. Now, the order to go is called an XOR, that is short for an order to execute. And those are followed up by fragmentary orders, which are FRAGORDS, commonly referred to as FRAGZORS. Now, there are no FRAGORDS between 8.39 p.m. and 3 a.m. because, as we suggest, it was clear error for the court to have ruled that the order was given at that time. Now, to conclude, there are seven congressional probes regarding this matter. And the last one was Trey Gowdy's Select Committee. And they, at the close of its 31-month probe, it issued its report, and it said that the order, the written order to go, was pending production. The DOD never provided it. Now, the sole source of the version that this was given at 8.39 p.m. was Leon Panetta's closed-door testimony before the Select Committee. And that closed-door testimony was released about six months after Mr. Gowdy issued his report. And he said that the written orders were, they had asked for the written orders, but they were pending production. They still had not been produced. Now, Mr. Panetta testified that someone types the orders out after they're given. Of course, that is the case. Now, insofar as the telephone call that they claimed that he gave at 8.39 p.m., was that three telephone calls or one telephone call to three combatant commands? There's no information about that. We have been arguing that the order had not been given for quite a, during the course of this litigation. And it would be fairly easy, I would think, for the government to respond with an affidavit from someone who placed the call, someone who received the call, or any of the hundreds of men who are said to have been ordered to go. Let me try to focus you a little bit here, because we have the background of the whole investigation with respect to Benghazi, and certain items specifically that you're requesting pursuant to the Freedom of Information Act request. So let me direct you first to the CIA's Inspector General Report. What exemptions are you specifically raising with respect to that? Because it didn't seem real clear from your briefing. Well, the Inspector General's Report is, what we're asking for is whether or not the Inspector General's Report relates that the CIA Chief of Base in Benghazi told the QRF, the Quick Reaction Force, to stand down. And that's not, that is redacted. We don't know what exactly it is that the CIA Inspector Reports was responding to. Okay, but when we look at a FOIA report, you're looking at whether or not there was an adequate search. And then we look at the government's response with respect to are they alleging any particular exemptions. And so what I'm asking you is, are you challenging the search, and then are you challenging specific exemptions in how the government responded? Well, Your Honor, we are not challenging the search. We are challenging the exemptions. Which exemptions do you believe that the government was not clear on, and how so? With respect to the Inspector General Report, because you've asked for several other things. Yes. Now, the information that we asked for is only, only whether or not a stand-down order had been given. And we believe that that information is in there. Now, I don't, there's no national security interest. There's no privacy interest. What do you mean by it's in there? Because you just said that there was an adequate search. An adequate search. The redaction is what we're contesting. And the redaction is of the stand-down order. The only information that we have from that Inspector General's report is that the CIA was not as full, or the CIA director was misinformed, and the response was not. But I hear you saying there's an adequate search, but at the same time, you're just saying the information was not in there. So that means to me that you're going to the actual exemption. What are you challenging about the exemption? Was it not the appropriate exemption? There is no exemption that would cover whether or not a stand-down order had been given. So, in any event. And that's not a national security interest? No. No, as to whether or not there was a stand-down order. Also, getting back to the DOD, we've also asked for the OPREP three pinnacle report, which is the first alert. And then on Exhibit 10, it does refer to the OPREP report. So what is your basis for stating that what they gave you is not accurate? They only referred to an OPREP three. They did not produce the OPREP three. How do you know what an OPREP three looks like? I don't know exactly what it looks like. Well, then you can't know whether this is an OPREP three or not. Excuse me? You can't know whether JA-162 is an OPREP three, an OPREP three, if you don't know what one looks like. It's not the OPREP three. It only refers to a telephone. It's not the OPREP three, but you don't know what one looks like. So how could you know if this is one or not? It is not one because it refers to a telephone call about an OPREP three. I think it's clear from that. I apologize for interrupting you, Judge Childs. Please continue. You're on the same line of questioning as I was. Just kind of baffled by the answer. Where is it referring to a telephone call here on JA-162? I don't have that in front of me. You don't have your joint appendix in front of you? I don't have that exhibit in front of me. It's JA-162. It says it refers to initial voice OPREP three. It is not the OPREP three. It does more than just have that line. I agree it says initial voice OPREP three, report, AFRICOM, and then it continues with line one, line two, line 2A, line 2B, line 2B1, 2B2, 2B3, 2B4, on and on and on. And a lot of that is redacted. Maybe I'll just ask the government if it's in – first of all, I'll ask them how we pronounce it, whether it's OPREP or OPREP. And then I'll also ask them if this is it or not. You're right. I mean, it may be that you're right that this is not it, but it seems odd that you can be so sure that this is not it when you've never seen it. Well, agreed. But I did ask them, I did accuse them, the DOD, of not providing it, and their excuse was for not providing it was that – You said they didn't provide it, and then they said in their red brief, we did, JA-162-3, and then you said in your reply, that's not the real report. So they haven't really had a chance since your reply to respond. Yes. In any event, I asked them. They said – they came back and they said, no, the OPREP – the plaintiffs had sought the OPREP-3 from the Defense Intelligence Agency, and the proper recipient of that FOIA request should have been African Command, AFRICOM. And they – that was the end of their suggestion. They did not at least come back and say that this is the OPREP-3. They just said, well, we asked for the wrong – asked for the wrong combatant command. Well, wait. If you look at the second line of JA-162, it says the originator is AFRICOM. Yes. Well, in any event, I don't believe that this is the OPREP-3. Moving on, as to the – Conceding the procedural argument that you make. I do not believe that this is the OPREP-3, if that answers your question, and that they – Because it refers to a telephone call? Yes, because it – Because it's redacted? No, the – I'm not complaining about the redactions. If this is – My notes – and you can tell me I'm wrong. Your argument, in part, is that no exemption justifies the redactions that the CIA and FBI made. Is that not correct? No, that is not correct, Your Honor. I'm quoting Blue Brief at 21. The OPREP – That's your opening brief. The OPREP-3, we're not contesting the redactions. We were contesting that they did not – the search, that they did not forward the request to AFRICOM as they said that they would. No, but Judge Walker just pointed out this document refers to AFRICOM. Yes, well, if I'm mistaken and this is actually the OPREP-3, then I stand corrected, but I don't believe that it is. In any event, moving on – And you don't believe it on the basis of what is what I'm trying to understand. Well, I don't believe it because the government responded that they did – they did initially responded that they – that the absence of the OPREP-3 was because the FOIA request was directed to the wrong combatant command. So – And now we have this redacted document that refers to the command that you say – Their response came after I made that – after I complained that the OPREP-3 had not been provided. Well, nothing wrong with that, is there? Excuse me? Nothing wrong with that, is there? There's nothing – And they responded. And you don't believe their response? No, I believe their response. Their response said that they did not provide the OPREP-3 because it was directed to the wrong combatant command. So if I'm wrong about this, we'll hear from the government. If this is, in fact, the OPREP-3, then I stand corrected. I'm not challenging the redactions to this document. So are you withdrawing some of the arguments that you made in your opening brief? I thought there were only those two issues that you identified in your opening brief. And we seem to have gotten a long way. If this is, in fact, the OPREP-3, then yes, I would withdraw the complaint that it is not. Very – I thought your response to Judge Childs was that you were objecting to the exemptions. No, Your Honor, I was not. The exemptions to the OPREP for this document, no. And you also said that there was an adequate search. So what are we here about? I didn't say there was an adequate search for the OPREP-3. I said there's an inadequate search for the OPREP-3 because I don't believe that they produced it. In any event, moving on to the FBI 302 reports, we suggested – which were withheld in their entirety. Now, we had three of the QF, the Quick Reaction Force, Mark Geist, Chris Parenteau, and John Tegan, all say that they were ordered by the FBI – by the CIA Chief of Base to stand down. Now, the Chief of Base denies that. The Senate Select Committee concluded that there was no evidence of a stand-down order having been given. I'm a little confused how that fits with your argument about the CIA document. I thought you were saying that the CIA document had been properly searched for but improperly redacted because it should have a stand-down order and that stand-down order should not be redacted. That's correct, Your Honor. But you just said that those three people testified that there was no stand-down order. Those three people testified that there was a stand-down order.  And the FBI had withheld that in its entirety. And we suggest that if the QRF are telling the truth, they would have told the FBI, and the FBI would – that would be reflected in the 302s, the FBI 302 reports, and those reports are withheld in their entirety. They were withheld under Exemption 7A. What's your argument for why they don't fit the criteria for 7A? Well, 7A has to do with ongoing criminal investigation. And this was 13 years ago. And since we're only asking for the information as to the stand-down order, I don't think the government could credibly argue that it is investigating whether or not there was a stand-down order. That's the only information that we're seeking. They say that there are investigations still ongoing. They can heavily redact those reports. They withheld them in full. Again, we're only asking for whether or not the report reflects that there was a stand-down order given, and that is a controversy that has not been settled, notwithstanding seven investigations by Congress. You're not arguing against their assertion that there's still an investigation ongoing. You're just saying they should unredact the part of the document that you think refers to a stand-down order. That is correct. I think that a proper production would probably be heavily redacted. But again, we're only asking for the stand-down order. Do you agree, do you not, that the government could justifiably respond at the time to your order? Thirteen years is stated in your reply brief, but that's many years after the government responded to your request. Yes, Your Honor, but in this de novo review – No, we don't reopen the record. Even if it was proper for them to heavily redact the 302s at the time that they responded, even if they did that, the redactions should not have included whether or not there was a stand-down order. I just don't see what possible exemption would cover that information. Thank you. Your Honor, may it please the Court. Urjah Mipthul for the government. I want to start where I think part of our conversation earlier left off with the OPREP 3 report. Exhibit 10 is the OPREP 3 report. This is clear from paragraph 24 of the DOD declaration from Mr. Harrington, which explains that while the request for the OPREP 3 was not sent to AFRICOM by plaintiffs, they did locate and produce Exhibit 10 as part of their response. I don't think it's in the JA, but Docket 68-3 is an index of declarations that the government submitted in district court as part of a sort of long-running litigation, and that, too, refers to Exhibit 10 as the OPREP 3. And obviously, as Your Honors identified, various indicia on the document itself on Exhibit 10 indicate that it's OPREP 3. It is the document that plaintiffs were searching, that the government produced, and that, in fact, AFRICOM produced. So hopefully that resolves that particular dispute. As to the remaining disputes, there are really only three narrow categories of documents that remain at issue after all of this litigation in district court. And as to each, the district court properly upheld the government's withholdings. First, plaintiffs seek DOD's maps, all of which were properly classified and withheld under Exemption 1 because they involve information about how U.S. military assets were positioned in the region where the attacks occurred at the time of the attacks. Second, plaintiffs seek FBI's interview reports and notes from its law enforcement investigation. That information was properly withheld under Exemption 7a, and the government's declaration, including the declaration from Mr. Seidel, which was submitted in 2023, explained how the release of that information would risk interfering with the investigation. To the extent plaintiffs seek particular aspects of those reports, their requests sort of amount to little else than sort of a fishing expedition. They think there are aspects of the content of those reports to which they're entitled. The government properly withheld all of that. Let me interject a little bit because under Executive Order 13-526 for the CIA and the DOD withholdings, there's that portion in there that says you can only classify for so long and then you have to declassify after a certain period of time. So what would be your evidence that even though this investigation has been going on with Benghazi for 13 years, that you actually have a time period at which you requested declassification? So, Your Honor, this information has not been declassified. But just to take a step back, the government's only relying, or the district court, I should say, only relied on Exemption 1 as relevant here for the DOD maps of the positioning of the assets. And then the specific portions of the CIA's withholdings that remained in dispute by the time this case sort of was resolved. And so Exemption 1 is relevant to the DOD maps, and it's relevant to the portions of the IG complaint records that CIA was withholding that plaintiffs were continuing to dispute. As to the FBI's what they're called 302 reports, they're the reports and notes and attachments that come from an ongoing law enforcement investigation. Those the district court upheld under 7A for the ongoing law enforcement investigation protection. But your declaration that speaks to the ongoing investigation, I'm thinking about the case of Crew v. DLJ 2014. It was considered conclusory just to speak about there's an ongoing investigation without having a little bit more specific information, and the case was actually remanded for that. That's right, Your Honor. This case, I mean, in Crew and consistent with Crew, the declarations in this case provide additional information and shore up the government's justification by kind of consistent with this court's case law in Crew and other cases, explaining the category of redactions and describing the redactions or the withholdings categorically, which is permitted. And here they did so, the FBI did so by describing what was withheld here in the interview reports as evidentiary and investigatory materials and then describing why the release of those materials would hamper or potentially adversely affect the investigation by allowing for witnesses to potentially be tampered with or evidence to be tampered with or people to change their testimony because of the releases that are made. That showing is sufficient under Crew, and it's really quite extensively laid out in Mr. Seidel's declarations. Under Exemption 7A, there isn't a requirement that the court go line by line or that the government release sort of a description of each individual document. It finds that it needs to describe those documents categorically to protect that law enforcement investigation. And in the grand scheme of sort of Exemption 7A invocations, this one isn't, in fact, quite all that old. I mean, the investigation was 13 years ago, but remains ongoing. And the declarations explain that it was ongoing as of the time of the challenge in the FOIA litigation, which wasn't all that long ago. So let's be clear. The only question before us is review of the district court's decision, right? That's right, Your Honor. All right. So we're not at 13 years. We're at a much earlier time.  Because the implication of your answer is that this could go on for 500 years because it's never been declassified and the executive order requirement would never kick in, and I don't think that's where you want to go, do you? No, Your Honor. We're not arguing that this information could never be declassified. Okay. So on the government's setback from its Glomar response, right? Here you've had books, movies, interviews with people in a position to know whether there was a stand down order. And to the extent there can be agreement as to what a stand down order is, as relevant here, how does that come under any of the exemptions? So, Your Honor. Then that FOIA is designed to let people know what the government's up to, and the exemptions are to be narrowly construed according to long, long, long standing Supreme Court precedents. That's right, Your Honor. And we don't contest any of that. We have a discussion of whether there's a stand down order that's been referenced in the media, in books and movies and so on, in the plaintiff's papers. That's what I thought. So what is it that the government is using an exemption to justify its non-response, as it were, as to the request for the stand down order? So the government has responded and produced a number of documents in this litigation. Each agency has. You heard my question, didn't you? Yes, Your Honor. Just to kind of take a step back. And so what the government produced here, and what the plaintiffs are still seeking on appeal, after all of their requests have been narrowed, are these interview reports, is what I think your question is getting to, Your Honor, the FBI's interview reports. And the request to be limited to a copy or, you know, a report based on recordings of what the words of the stand down order were. That's right, Your Honor. The initial request was much broader. The government properly withheld these reports. I'm trying to get you to focus on, and I can understand why you may not want to, but still I want to understand what the government's position is. If the only question is whether an exemption that the government has invoked justifies not disclosing the text of a stand down order, then where is the line drawn if that's not a GLOMAR response by the government? It's not a GLOMAR response by the government because what the government is invoking as relevant to plaintiff's request is invoking 7A as to the interview reports, which protects all of their contents. You don't want to deal with my question. No, Your Honor. The government hasn't not at any point identified the contents of those reports. And so there's no discussion of whether those reports contain this purported order. And the same is true of the IG complaint, which is where plaintiff is seeking this so-called order. So the court, given its standard of review, should in your view say what? That the district court correctly held that the government had that the appellant request for the stand down order must properly be understood as requesting. Can you finish the sentence? They're challenging the withholding of information from the FBI reports and the CIA reports. And their challenge is based on their contention that those redactions improperly withhold this order that they believe is contained below them. The government has explained. What I'm trying to get at is I took the government to agree that there was a stand down order given. All right. Once it got off the GLOMAR response, I understood the government not to be contesting that. What I thought the government might be saying is it's not as simple as just issuing a recording, transcription of a recording of the stand down order. Because that would reveal one, two, three, four. Regarding things that the government thought might impinge upon national security, impinge upon the interests of the employees who were put in this difficult position, dangerous position. But that's not what I see the answer. So when the challenge is not to the government's right to invoke these exemptions, but rather that the government has simply applied them too broadly in redacting certain phrases from the FBI and CIA documents that he seeks. Isn't that the argument that's being made here? So two responses, Your Honor. First, you're absolutely correct that the government has invoked national security interests and an interest in protecting the identity of confidential sources in the redactions that remain from the CIA reports we've invoked. And the district court upheld the invocations of exemptions 1, 3, and 7D. And so those were the bases for the redactions from the CIA documents. And those were some of the same interests that drove the 7A exemption invocation in the FBI context. It is the Glomar response, as I understand it, Your Honor, was in the context of the FBI's response earlier in the litigation where it hadn't even produced any interview reports. It wasn't specific to the stand-down order that the plaintiff was requesting information about. And it wasn't an acknowledgment. The government's withdrawal, that's on the table. Correct. But the withdrawal of the Glomar response was not an acknowledgment of any sort of stand-down order reference being in the documents. No. Now the government has to show why the exemption it invokes, when narrowly construed, cover even the fact of a stand-down order. That's right, Your Honor. To the extent plaintiffs are seeking particular information that they believe is in the interview reports that the government hasn't identified because the government has justified the withholdings on a categorical basis consistent with CRU, that those withholdings are justified in the Seidel Declaration, which is the FBI declaration, and in the Shiner Declarations, which are the CIA's declarations, which lay out those very interests that Your Honor identified under Exemptions 1, 3, and 7D, protecting national security, protecting the identity of people and the information they have, who bring complaints to the IG or to the CIA, and protecting intelligence sources and methods. And so if you look at the IG record releases, those are pretty carefully redacted. Those aren't withheld in full. And as the, I think it's the Supplemental Declaration from the Shiner, from the CIA, lays out, there's quite a lot that is still disclosed about how this complainant was trying to bring additional information about the attacks to Director Petraeus' attention. And so the government fairly carefully redacted these documents and then invoked the appropriate exemptions for the remaining information. Whether that remaining information covers information the plaintiff seeks wasn't something that sort of is relevant to the invocation of the exemption, as long as there is an unquestioned good faith affidavit in the record, which there is here. Just briefly returning to declassification, isn't that a requirement with respect to the executive order, that you declassify after a certain period of time? And I believe that the way that particular area reads is that if you don't, then it would be considered declassified. Your Honor, I don't have the executive order in front of me, but there are, you're correct that there are declassification requirements. This particular information is classified and was classified at the time the declarations were submitted in support of the government's invocation of Exemption 1. And those classification decisions weren't challenged by plaintiff in district court. And so that was sufficient for the district court to uphold the government's invocation of Exemption 1. And again, the only two categories of documents for which that's relevant here are the maps that DOD had, the positioning, showing the positioning of military assets in the Benghazi region, and then individual portions of the CIA IG records, which are, you know, sort of a handful of pages. That information, as the government explained, contained the classified information that would tend to release, result in the release of intelligence sources and methods. And that information was all sort of kind of in the heartland of information that the government classifies, particularly with attacks of this sort and sort of the subsequent investigations. So under Section 1.5 of that order, it says at the time of original classification, essentially the original classification authority shall establish a specific date or event for declassification based on national security sensitivity. Once that date passes, the information shall be automatically declassified. So are you suggesting that it's been declassified and then you presented what was available? Or are you still holding on to that it is classified and that you did not appropriately declassify here? No, Your Honor. The information is classified or at least was classified at the time that these declarations were issued in support of the withholdings. And I'd have to check with the agencies, but my guess would be that they remain classified, not that it was ever declassified to my knowledge. But are you in violation of Section 1.5 if it has not been, if the time period has gone? No, Your Honor. I'd have to check with the agency, but I don't believe, and I'm happy to get back to you. Given your position, the time period has not passed yet? I don't, it's not my, yes, it's my understanding the time period has not yet passed. And there may be a declassification date on these documents that I haven't, I'm not aware of at this moment, but it's not my understanding this information has yet been declassified.  The OPREP 3 report on JA-162, did the government find it by doing a search in AFRICOM? That's my understanding, yes. The paragraph 24 of Mr. Harrington's declaration says that AFRICOM located and produced Exhibit 10. And so my understanding is that that request for the report that plaintiffs had submitted had been conveyed to AFRICOM. AFRICOM searched their records and produced this. And I suspect that it would be classified to speak, and I haven't seen anything that's classified in this case. I'm guessing it'll be classified to speak to what the particular specific reasons were for classifying any one piece of evidence, piece of information in this case. Because if you explain that, you might be explaining what the information is. But as a general matter, not this case specifically, but just a general matter, if there is an attack on a U.S. embassy or consulate, and our national security apparatus responds in a certain way over a certain number of hours, that information about everything that we did during those hours would be useful to the next terrorist who is thinking of attacking a different embassy. As a general matter, isn't that correct? That's right, there are good national security interests for classifying this information, and a lot of it has been classified. I mean, some of this information about how the government responded was, in fact, provided to the plaintiffs. I mean, this goes to, I think, the plaintiff's argument that, well, if there was a stand-down order, it should be declassified. But I don't understand that. It sounds like you disagree with that proposition as well. Well, maybe if we could be assured that no terrorist would ever attack a U.S. embassy, consulate again, we could tell the terrorist exactly how we respond in great detail when an embassy is attacked. But it seems like that would kind of be giving our war plans to the enemy if we did that, right? That's right, Your Honor. To the extent any such order exists underneath the redactions that were imposed pursuant to Exemption 1, that would presumably be one reason to classify that information. Again, the FBI reports are withheld pursuant to 7A, or at least that was the district court's judgment that we're seeking affirmance of here. To the extent it's public, what group attacked Benghazi? I think the perpetrators and the names and the identities of those individuals are part of the investigation, and there are varying accounts. It's not public whether it was a particular terrorist group? It's fine if it's not. I'm not asking for anything. No, no, Your Honor. I don't know what the appropriate name for that group would be and whether that's been at issue in this litigation. I think the Congressional Reports, the Senate's Law Committee Report and all name various perpetrators. Is it public that at least some of the people who attacked Benghazi were motivated by radical, violent, religious extremism? That's, Your Honor, that's the media reporting. I don't know what the specific agencies in this case have, how they've characterized the attackers. If that were the case, would it be fair to say that there are still violent, radical, religious extremists who are trying to harm Americans? Your Honor, I think that would be a plausible yes. And a reason to justify, explain the national security, a reason why the national security interest is here. Judge Rogers. Thank you. Thank you. Briefly, there's no privacy concerns from the three quick reaction force. They've been, they're the source of the book and the movie. They've been on. 7A is not a privacy exemption. No, but they did. Why are you talking about their privacy? Because they asserted privacy. But that's not the exemption that is on appeal. That's not the exemption that the district court relied on. Very well. And then my other very brief point is that when Secretary Panetta testified before the closed-door testimony, he testified that he was checking with, after he gave the order, by 7 o'clock p.m., he was checking with his generals, his chief of staff, the joint chiefs of staff, to make sure that the assets had responded and were moving, and that he was assured by all of them that the assets were moving. But, in fact, the order had not even been given until almost two hours later. Mr. Gowdy's committee blamed that on some sort of bureaucratic snafu. No one stood watch over the behemoth to make sure that they were, in fact, responding. So I suggest to the court that that is just not believable, that these generals were telling Secretary Panetta that things are moving when the order had not even been given. Thank you. Thank you.
judges: Walker; Childs; Rogers